*831 OPINION.
Trusselu :
The first issue relates to the valuation of the inventory of December 31, 1918. In computing gross income, respondent increased the amount of this inventory by the disallowance of a deduction taken by petitioner amounting to $6,500, which was the sum of two items; a reduction of $6,327.25 for cash discounts and an allowance of $172.75 for expected returns and allowances. At the hearing petitioner admitted error with reference to the returns and allowances, but it contends that the deduction of the amount of $6,327.25 is properly allowable. Purchases of merchandise by petitioner are made on various financial terms. In some instances invoices are priced at a net amount which petitioner is expected to pay. On other purchases discounts from the amount of the invoices are offered as inducements to make early payment. These discounts are customarily referred to as “ cash discounts,” and they range from extremely low rates to discounts as high as 10 per cent. Petitioner priced its inventory of December 31, 1918, on a basis of cost or mar • ket, whichever was lower, and it reduced the value thus arrived at by the allowance of 2 per cent for cash discounts. It is not denied by respondent that these discounts are properly allowable as reductions of the cost prices for inventory purposes under article 1583 of Regulations 45. The disallowance of the deduction is based upon the opinion that the. amount is a mere approximation and the true amount of the discounts should be ascertained. Petitioner has overcome the presumption of material error, for it is in evidence that the rate of 2 per cent which was used in computing the amount of the reduction was arrived at by employees of petitioner who made tests which satisfied them of its practical accuracy. We are satisfied from the record that the summary disallowance by respondent of the entire deduction is erroneous and we believe that the deduction claimed by petitioner considered retrospectively is reasonably accurate. In addition to its accuracy, the method used has been the consistent practice of petitioner since 1910, and there is no basis before us for a conclusion that the method has resulted in a distortion of income. We have had occasion before to consider a similar issue in Higginbotham-Bailey-Logan Co., 8 B. T. A. 566, wherein we decided *832 that the practice oí allowing for cash discounts should be approved provided it is consistently adhered to.
The reduction of 2 per cent was also made by petitioner to its inventory at the beginning of the year 1918, and this deduction has also been disallowed by respondent. Petitioner did not appeal from this adjustment, but to allow it to stand and to restore the reduction to the closing inventory would depart from the consistency so vital to the approval of any method of inventory valuation. See The Buss Co., 2 B. T. A. 266; and Sinsheimer Bros., Inc., 5 B. T. A. 918. It follows that the disallowances by respondent of the deductions of $4,845.45 from the opening inventory and $6,327.25 from the closing inventory were in error and they are reversed.
The second issue relates to deductions from gross income classified in the return as bad debts. Included are an inventory item; trivial allowances to solvent customers; claims of various sorts; an item in the nature of a capital investment and numerous items partially charged off. It is necessary to consider in detail the various questions involved. For convenience of reference the items have been grouped in the findings of fact.
We think the small balances of Cochran, Bonzo, Limbert and Parker in Group “A” are in the nature of allowances which are unavoidably incident to a business such as that of petitioner. Disregard of them results in an overstatement of gross income and they should be allowed. The Boyd account was closely allied to these and in addition it is shown that it was uncollectible. This item also should be allowed. Respondent is reversed on the five items in Group “A.”
The accounts in Group “B ” are all claims entered on the books against transportation companies. There are a relatively great number of them and many are trifling in amount. The method of accounting followed by petitioner was to enter the claims on the books as accounts receivable and to charge them off to profit and loss, after a brief interval, if correspondence failed to result in assurance of the attention of the transportation companies. The conclusion is. inescapable that the very short interval allowed was more convenient than justified, for the experiences detailed in the findings of fact show that in a majority of instances settlement was subsequently made and the amount finally settled upon was collected in the year following entry. However, there are two items: Erie Railroad Co., $1.75, and Adams Express Co., $150.50, which were never paid and we see no reason for reversing the conclusion which the petitioner arrived at in 1918, that these accounts were worthless in the sense that further proceedings would not result in the collection of any portion of them. In our opinion the deduction of $152.25 is allowable *833 in this group and the remainder was properly disallowed. Cf. Greenville Textile Supply Co., 1 B. T. A. 152.
Group “ C ” includes seven accounts reflecting charges set up on the books of claims for spoilage in the warehouses of petitioner of goods the property of petitioner. It is admitted by petitioner that the parties charged were not liable in any way for the losses. It is obvious that the accounts were not bad debts. But on the other hand they were most certainly losses and we are satisfied that they are properly allowable as deductions from gross income. Disallowance of them results in restoring to the balance sheet accounts which measure losses and are not assets, resulting in an overstatement of net income.
Group “ D.” It is necessary to discuss separately the items under this group.
The account of Corimer Bice Company was not a debt.. It represents the cost of empty bags, the property of petitioner. The bags were charged off in 1918, for it was the opinion of petitioner that they would not be used for packing rice. They were retained, however, and eventually used, and we are not satisfied that they were definitely abandoned and entirely useless at the end of 1918.
The accounts of Carnasso and George are similar save in their ultimate outcome. Both customers had ordered flour, but, due to the war-time regulations then in force, mixtures of flour and substitutes were shipped. The customers were disappointed and refuséd to accept the shipments, denying liability. The shipments were finally sold by the transportation companies for the charges. Petitioner entered suit against these customers, losing to Carnasso and winning from George in part. These accounts receivable were entered on the books of petitioner in the manner usual to its system of accrual accounting and we see no reason for singling them out for differentiation. In a subsequent year, as the outcome of litigation, one account was determined wholly bad and the other partly so; the bad debts are properly deductible in the subsequent year.
The item of Heinzer is admitted by petitioner to have been charged off and deducted in error.
The debtors, Krelandis and Johnson, owned real estate in the form of an unimproved lot which was not highly valued by petitioner; nevertheless petitioner acquired title to the lot through the medium of a sheriff’s sale at a nominal consideration. Petitioner charged off the entire account of Krelandis and Johnson in 1918 as a bad debt. The lot was subsequently sold for $150 and the entire proceeds were reported as income. From the meager facts before us, we are of the opinion that petitioner erred for there was no determinable loss in *834 1918. The amount of the debt was a part of the cost to petitioner of the lot, under the circumstances, and it was not a loss or bad debt in 1918.
The account charged on the books against the Mercer County-Light & Heat Co. was the cost of a transformer of electric current. The expenditure did not result in the acquisition by petitioner of title to tangible property. Its cost, however, was in our opinion not merely an expense of the year 1918, for the Light & Heat Co. had agreed to allow $1 per month as a reduction of the bills of petitioner until the aggregate cost of the transformer was returned to petitioner. And, furthermore, the benefit to petitioner of the investment extended over a number of years. Subsequently petitioner treated the allowance of $1 per month as income, but we are unable to agree with this, for the credits were reimbursements of the money advanced by petitioner. We think the expenditure should have been capitalized as a deposit with the light and heat company and credited monthly with the $1 allowances until extinguished. The gross amount of the bills for electricity were properly deductible as expense in the year in which incurred.
The bad debts of Marshall, Moore, Tebajq Watson, and Weister are alike and may be considered together. They are for the unpaid amount of promissory notes due from the parties who were all also indebted to petitioner on open accounts at the close of 1918. The amounts of the open accounts are not claimed to be bad debts. In our opinion, petitioner has failed to establish any definite determination of bad debts, and, furthermore, partial losses are not deductible under the Revenue Act of 1918. See Steele Cotton Mill Co., 1 B. T. A. 299, and Murchison National Bank, 1 B. T. A. 617.
The claim of Wacher was recognized by the trustee in bankruptcy as an obligation of the bankrupt, and in 1918 a final distribution was received from him, leaving uncollectible and a loss the amount of $459.06. The deduction is allowed. Respondent reversed.
In Group “ E ” are three small accounts claimed as bad debts and disallowed as deductions by respondent. The record is utterly devoid of facts relative to these accounts and the respondent is sustained.
The third issue is relative to expenditures classified by the petitioner as repairs, but disallowed as deductions by respondent. The expenditures were almost entirely for remodeling fully detailed in the findings of fact and in our opinion having a useful life longer than the taxable year. It is well settled that improvements having a life longer than the taxable year should be capitalized and exhausted ratably over their useful lives. See Simmons & Hammond Mfg. Co., 1 B. T. A. 803, and Sentinel Publishing Co., 2 B. T. A. 1211. In connection with the work for the office, the expenditures *835 included the cost oí $60 for painting the office, and this we think is allowable as a deduction in full in 1918. Respondent is sustained for $610.43 and is reversed for $60.
The fourth issue concerns amount of depreciation of motor trucks which is allowable as a deduction from gross income. The cost of the trucks is not in controversy. The parties are not in agreement as to the probable duration of the useful lives of the trucks. Taking into consideration an active, useful life of three years of the trucks, followed by a period of occasional emergency use, and in view of ■the severe conditions under which the trucks were operated, all in .■accordance with the evidence adduced, we are of the opinion that a life of four years affords a satisfactory basis upon which to compute an allowance for wear and tear of these trucks, and we so find. Respondent reversed in part.

Judgment will be entered wpon 15 days’ notice, under Rule 50.